BROWN & SHARPE MANUFACTURING COMPANY *vs.* GUISEPPE CAMPO.

APRIL 22, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is an employer's petition under the workmen's compensation act, general laws 1938, chapter 300, for review of a preliminary agreement entered into by the parties and approved by the director of labor. The petition was granted by the director of labor who reduced the payments from total compensation to maximum partial compensation, and the employee appealed to the superior court. Following a hearing in that court a decree was entered in favor of the petitioner. Thereafter the respondent duly prosecuted his appeal to this court.

The agreement, dated October 5, 1950, sets forth that on September 25, 1950 the employee sustained a scalp laceration when he was struck on the head by a "core plate" falling from a car which he was greasing in the course of his employment. At the hearing of the instant case the trial justice, on petition of the employee and apparently without objection by the employer, allowed the allegation of injury in the agreement to be amended by adding thereto the following: "abrasion of the scalp, congestion of the brain, cerebral concussion, headaches, dizziness, buzzing in the ears, impairment of vision and nervousness." The parties thereafter proceeded to trial on the agreement as amended.

The extent of respondent's incapacity is the only question in this case. His testimony in essence was that because of headaches, dizziness, continual buzzing in his ears, and nervousness he was unable to do work of any kind; that due to those ailments he had at times fallen and injured himself; and that to avoid such occurrences he had resorted to the use of a cane for support.

On the day of the accident and injury the employee was brought to a hospital where he was attended by Dr. Wilfred Pickles, a neurosurgeon of repute, who continued to

treat him up to the time of the hearing under consideration. Doctor Pickles was called by the employee and was the only medical witness in the case. He testified at length from his notes and reports as to his treatment and observation of the employee over that entire period.

Omitting all details, his testimony in substance was that for a considerable period prior to testifying in this case he could find "no organic evidence of residual injury"; that from his examinations combined with those of eye, ear and other specialists during that time respondent's complaints were entirely subjective; and that at most he was "emotionally upset * * *." He unhesitatingly confirmed his written report of November 13, 1952 and testified: "I am still of the opinion that a return to work, of such a nature that the dizziness would not constitute a hazard to himself or to his fellow workers, is the only form of treatment which offers any hope of bringing about this man's recovery." It also appears that the doctor had expressed the same opinion in September 1951.

While the case was pending in the superior court counsel for the employee on October 16, 1953 sent a letter by registered mail with return receipt requested advising the employer that in accordance with the several reports submitted by Dr. Pickles the employee was "willing to return to your concern for light work of such a nature that dizziness will not constitute a hazard to himself or to his fellow workers." The letter ended by asking whether such type of work was available "as Mr. Campo is desirous of carrying out the suggestions of his physician." The employer's reply thereto in its letter of October 26, 1953 offered the employee a job in the pattern storage room which "we believe he can do without injury to himself or others," described in general terms the duties of his prospective employment at $1.35 an hour for forty hours a week, and asked him to report within the next few days.

On November 5, 1953 at 2 o'clock in the afternoon the employee began working at his new job, which consisted of

dusting patterns on benches and sweeping the floor. He testified that within the next two hours he had three attacks of dizziness, the last one causing him to fall to the floor. No one saw him fall. However, a fellow employee who was working near by happened to see him on the floor and with others went to his assistance. The respondent then asked for "the boss," who came immediately thereafter, and after telling him about the occurrence and the cause thereof, he was sent home at his own request. In cross-examination the boss, under whom respondent had previously worked for a number of years, expressed doubt in no uncertain language as to the employee's veracity in matters personal to himself.

The findings of fact by the trial justice in the decree appealed from are as follows: First, that the respondent was no longer totally disabled but only partially incapacitated; second, that he could do light work in an occupation where dizziness might not endanger him or others; and third, that in a period of six weeks he probably could find such work and adjust himself gradually to it, thereby establishing a true earning capacity. He therefore ordered the reduction of payments of compensation for total incapacity to maximum compensation for partial incapacity for six weeks from the date of the decree, January 29, 1954, *and thereafter nothing.* However, the trial justice reserved to petitioner and respondent "the right by suitable motion and notice after the expiration of this six-week period to re-open the matter in this Court, jurisdiction being hereby retained, excepting for the purposes of appeal." We note here that at the hearing before us petitioner again offered to employ respondent at light work of the character hereinbefore described.

The respondent broadly contends that all the findings of fact by the trial justice are not supported by legal evidence. We do not agree with such contention, although there is language in the decree which is susceptible to misunderstanding and therefore requires clarification. It is now so well established as to require no citation of authorities that

in compensation cases we may not pass on the weight of the evidence or the credibility of witnesses; that a conclusion of the trial justice by way of reasonable inference from legal evidence is a finding of fact; and that, in the absence of fraud, findings of fact based on legal evidence are conclusive. Applying these rules to the circumstances in the instant case it is clear that the following findings are supported by legal evidence: First, that respondent is no longer totally incapacitated; second, that he is partially incapacitated; and third, that since there was no evidence from which to determine his true earning capacity, he is presently entitled to maximum partial compensation. These findings are therefore affirmed.

The respondent further strongly contends that, in the absence of evidence showing that his incapacity would end in six weeks, it was unreasonable and arbitrary for the trial justice to order payment of maximum partial compensation for such period "and thereafter nothing." There is merit in this contention because, notwithstanding respondent's misconception of the real purpose of the order in question when read in the light of its context, the language used in the decree to express that purpose, if taken literally, is misleading and contradictory.

It is evident that the trial justice was not convinced that respondent had made an honest effort to do the work offered by the employer or to secure elsewhere light work of the character that his doctor had repeatedly advised him to undertake. When the order in question is read as a whole it clearly appears that the trial justice had two objectives in mind. First, he intended to give respondent the opportunity of returning to work for the employer or of obtaining light work elsewhere, so that at the end of six weeks there probably would be a basis for determining the compensation fairly due him for partial incapacity; and secondly, he intended to warn respondent that if at the expiration of such period it should appear that he refused to cooperate he would run the risk of losing all benefits under the act until

he decided to do so. *Fulford Mfg. Co.* v. *Lupoli,* 75 R. I. 488; *Collyer Insulated Wire Co.* v. *Hockenson,* 71 R. I. 415.

The order under discussion was plainly interlocutory. In substance it amounted to a continuance for six weeks, at the end of which period the hearing was to be resumed for the introduction of evidence concerning matters about which the trial justice was in doubt. Since without further evidence he could not foretell what his decision would be at the end of six weeks, it was error to provide that at the expiration of such period payment of compensation to the respondent should cease. Therefore, in the order for payment of maximum partial compensation for six weeks, the added words "and thereafter nothing" should be stricken from the order and decree.

Furthermore, the trial justice himself should have fixed the date to which the hearing was continued, rather than leave such date to the discretion of the parties. It is our judgment that if the procedure above indicated is followed whenever, as here, the circumstances warrant a continuance for the production of additional evidence to determine the employee's true earning capacity, the real meaning of the trial justice's decision on a material and controverted issue will not be misunderstood.

Since the period of six weeks specified in the decree appealed from within which respondent was ordered to try to do light work has expired, that portion of the decree is hereby modified so that such period shall begin to run from the filing of this opinion; and further that the case shall be assigned for hearing before the same justice of the superior court, if available, and otherwise before some other justice thereof on the first court day for the hearing of equity cases following the expiration of the six weeks above mentioned.

The respondent's appeal is sustained, and the decree appealed from is affirmed in part and modified in part as above indicated. In the special circumstances of record, the cause

is remanded to the superior court rather than to the recently created workmen's compensation commission, with direction to enter said modified decree and for further hearing and decree in accordance with this opinion.

*Worrell & Hodge, Lee Worrell,* for petitioner.

*Michael Addeo, Ralph Rotondo,* for respondent.